## DUNBAR v. GREEN.

ERROR TO THE SUPREME COURT OF THE STATE OF KANSAS.

No. 200.　Submitted April 6, 1905.—Decided May 1, 1905.

The guardian of an Indian minor appointed in a county of Kansas, other than that in which the land was situated, gave a deed to his ward's property; the grantees did not take possession or exercise any act of ownership for thirty years, when the original owner took possession of the land which was still vacant and unimproved, and for the first time asserted the invalidity of his guardian's deed; thereupon the grantees under the guardian's deed brought ejectment; the defendant answered by general denial and also by cross-petition asked for equitable relief quieting the title and declaring his guardian's deed void; the state court held the deed void but awarded possession to the grantees thereunder on the ground of the ward's laches.

Held, error; that in an action of ejectment plaintiff must recover on the strength of his own title and not on the weakness of defendant's, and that the rule is not affected in this case by the fact that the defendants, by cross-petition, had asked for equitable relief.

THIS was an action of ejectment brought September 22, 1900, in the District Court of Wyandotte County by defendants in error, who were plaintiffs below, to recover possession of certain lots of land in the city of Argentine. The case was tried upon an agreed state of facts, substantially as follows:

The land was patented December 28, 1859, to Susan Whitefeather, as the head of a family, consisting of herself and her son, George Washington, who were members of the Shawnee tribe of Indians. The patent was issued under the treaty of May 10, 1854 (Indian Treaties, p. 792), with the Shawnees. Whitefeather died prior to July 10, 1862, and her son George Washington inherited the land. On November 27, 1867, he being then fourteen years of age, the Probate Court of *Johnson* County appointed Jonathan Gore as his guardian, though the land was in *Wyandotte* County. In these proceedings Washington is described as the minor heir of George and Judy

Washington. Under such appointment the guardian sold the land to one Joel F. Kinney for $2,000, executing to him a guardian's deed, which was approved by the Secretary of the Interior, May 21, 1869, and the title so acquired by Kinney passed by a series of conveyances to the plaintiffs Green. In these proceedings for a sale Gore described himself as guardian of George Washington, the minor heir of Susan Whitefeather, deceased. Washington remained a member of the Shawnee tribe until September 26, 1900, when he was made a citizen of the United States. He took no steps to impugn the validity of the guardian's deed until June 25, 1895, when, according to the agreed statement of facts, the defendant Dunbar took possession of the land as his agent. Up to this time it had remained vacant and unimproved. Plaintiffs recovered judgment, which was affirmed by the Supreme Court. 66 Kansas, 557.

*Mr. L. F. Bird* and *Mr. H. G. Pope* for defendants in error.

There was no brief for plaintiffs in error.

Mr. Justice Brown, after making the foregoing statement, delivered the opinion of the court.

The deed of Jonathan Gore, guardian, to Joel F. Kinney, dated October 14, 1868, of property situated in *Wyandotte* County, was attacked upon the ground:

1. That Gore was never appointed guardian of the defendant, George Washington, who was the son of Susan Whitefeather, but was appointed by the Probate Court of *Johnson* County as the guardian of George Washington, while another person, named Elizabeth Longtail, was on July 9, 1862, appointed by the Probate Court of *Wyandotte* County the guardian of apparently another George Washington, the minor son of George and Judy Washington, who lived and owned land in that county. Indeed the records are in a hopeless state of confusion.

2. Because the guardian's deed was executed and delivered five months before he had obtained authority from the Probate Court to make it.

. 3. Because the petition of the guardian to sell the land did not describe the property, and because it was void on its face.

Not only did this not involve a Federal question, but in its opinion the court assumed, for the purposes of the case, that the guardian's deed was void for want of jurisdiction, and placed its decision solely upon the ground that Washington had been guilty of such laches as would bar recovery.

The only Federal question turns upon the right of George Washington, a Shawnee Indian, and one of that class of persons who are aptly described as "wards of the nation," to avail himself of the Whitefeather patent, notwithstanding his assumed laches in taking possession thereunder. We are much embarrassed by the failure of the defendants in error to file a brief. But we do not understand how the defense of laches is pertinent to the case. The action is ejectment. The plaintiffs must recover on the strength of their own title, and not upon the weakness of the defendants'. The only title set up by the plaintiffs is that derived from the deed of Jonathan Gore, guardian of the defendant Washington, which is assumed by the Supreme Court to be void. The plaintiffs did not show that they were ever in possession of the land, which appears to have been vacant and unoccupied until Dunbar took possession for the defendant Washington, in June, 1895. The plaintiffs are not shown to have exercised acts of ownership, or even to have paid taxes. We do not understand the materiality of the suggestion that the defendants have lost their rights to the land by the laches of George Washington, the Indian. Laches is a defense often set up in courts of equity in bar of plaintiffs' claim, but here it is set up by the plaintiffs, as a weapon of attack, although the defendants are the only parties who are or have been in possession of the land. They have shown plaintiffs' title to be void, and that they have been in possession of the land for five years. They are entitled to

stand upon their rights. As the deed was void, no affirmative action on the part of George Washington was necessary. Indeed, as plaintiffs took no action under the guardian's deed to Kinney for over thirty years, it would appear that they were guilty of greater and more inexcusable delay than the defendants.

The only difficulty arises from the cross-petition of the defendants, incorporated with their answer, in which they demand that their title be quieted, and that plaintiffs be enjoined from setting up or making any claim to the property. If this were an original petition by defendants in possession to remove a cloud from their title, it is entirely possible that the court might find that they had been guilty of such laches as would disentitle them to recover; but the petition of plaintiffs in the case is an ordinary petition in ejectment, praying for possession of the land as against the defendants, for damages, and for an injunction pending trial. The case was tried by the court without a jury, as an ordinary action of ejectment, and recovery decreed in favor of the plaintiffs for possession of the property, with costs. No mention was made in the opinion or judgment of the cross-petition of the defendants.

We do not see how the case can be treated other than as an ordinary action of ejectment. In the case of *Cheesebrough* v. *Parker*, 25 Kansas, 566, it was held that where, under the practice in Kansas, an action is commenced for the recovery of real estate, the right of the plaintiff to demand a second trial under the statute is not taken away by the addition to the petition of a claim for mesne profits, nor by the fact that the defendants set up an equitable defense and claimed equitable relief in the answer. In delivering the opinion of the court, Mr. Justice Brewer, now of this court, observed: "Under a general denial," (in an action of ejectment) "every possible defense may be interposed. If, instead of such general denial, the defendant sets out in detail an equitable defense, this does not change the character of the action or abridge the rights of the plaintiff. It is a grand mistake to suppose that by setting

up in an answer an equitable defense to an action for the recovery of real estate, either the plaintiffs' right to a jury trial, or a second trial, under the statute, can be abridged. Whatever effect such defense may have upon defendants' rights, the plaintiffs' are unchanged. They have commenced an action, under the statute, for the recovery of real property, and no rights given by such statute can be taken away by the character or form of the defense." The substance of the opinion is that an action of ejectment must be tried as at law, notwithstanding that an equitable claim or defense is set up by one of the parties.

Had the plaintiffs taken possession of the land under their guardian's deed, and an action been brought by the Indian, they might perhaps have pleaded in defense laches or the statute of limitations; but as the property remained vacant and unimproved for over twenty years, we do not see why the defendants do not stand in a position to avail themselves of the fact that the plaintiffs' only title is derived from a void deed, especially in view of the fact that the defendant Washington shows a patent to the land to his mother, Susan Whitefeather, and that he is her only heir. The record presents the curious anomaly of a recovery by plaintiffs who have neither title nor prior possession against defendants, who have both.

Had the defendants, after taking possession, filed a bill to quiet their title and remove the cloud created by the guardian's deed, a different question would have been presented.

*The judgment of the Supreme Court of Kansas is, therefore, reversed, and the cause remanded to that court for further proceedings not inconsistent with this opinion.*