## HENRY LEVINE AND ANOTHER v. TWIN CITY RED BARN NO. 2, INC.

207 N. W. 2d 739.

May 25, 1973—No. 43966.

*Henry Levine,* pro se, for appellants.

*Doherty, Rumble & Butler* and *Bruce E. Hanson,* for respondent.

Heard before Knutson, C. J., and Rogosheske, Peterson, and Gillespie, JJ.

PER CURIAM.

This is an appeal from the denial of plaintiffs' motion for a new trial.[1] Plaintiffs brought an action for ejectment and for damages against Twin City Red Barn No. 2, Inc. The question of plaintiffs' right to exclusive possession of the land from which they sought to eject defendant was the only issue tried to the court. The issue raised on this appeal is whether the trial court clearly erred in finding that plaintiffs had knowledge of an easement over the land in question at the time they purchased it, thus depriving them of their right to exclusive possession of the land. We affirm the decision of the trial court.

In 1965, plaintiff Henry Levine, a Minneapolis attorney, became acquainted with John Challas, an independent contractor who secured real estate for Red Barn System, Inc. In May 1965, Challas persuaded Levine to buy land at 4900 Central Avenue Northeast, Minneapolis, described as Lots 17 and 18, Revised Auditor's Subdivision No. 15, Anoka County, Minnesota, for the purpose of building a restaurant thereon and leasing the premises to Red Barn System. On June 21, 1965, Challas purchased in the name of Minnesota Intrastate Leaseholds, Inc. (MIL), a corporation owned wholly by Challas, a lot adjoining Lots 17 and 18 to the north, which is described as the south 112 feet of Lot 16, Revised Auditor's Subdivision No. 15, Anoka County, Minnesota. On June 3, 1965, the Forty Nine Hundred Central Corporation leased Lots 17 and 18 to Twin City Red Barn No. 2, Inc., a franchisee of Red Barn System, for a period of 25 years. A warranty deed from Levine and his wife, Fannie S. Levine, to Forty Nine Hundred Central Corporation, covering Lots 17 and 18, dated June 28, 1965, was filed for record on June 29, 1965. On June 18, 1965, MIL leased the north 82 feet of the south 112

---

[1] Defendant contends that this appeal should be dismissed on the grounds that plaintiffs' motion for a new trial was in part founded on the unavailability of a transcript. While it is true that this ground for the motion is no longer available, plaintiffs did include in their motion the grounds here considered.

feet of Lot 16 to J. & L. Investment Company for use as the site of a car wash. (In June 1969, the Levines gave a deed to Lots 17 and 18 to one Morris Weiner and others, although the record title thereof was in the name of Forty Nine Hundred Central Corporation.)

On July 26, 1966, an easement was granted from MIL to the Forty Nine Hundred Central Corporation for a term of 25 years over the south 30 feet of Lot 16 for the following purposes: (1) To erect, conduct, maintain, and use the said area as an automobile parking lot; (2) to conduct, maintain, and use the said area as a refreshment, picnic, and eating area, and to erect, maintain, and use picnic tables and benches on said area; and (3) to maintain and use said area as a method of ingress or egress. The easement deed was signed by Challas individually and as president of MIL but was never recorded. Challas contends that he was acting as president of both corporations at the time and that the easement was given for the benefit of Twin City Red Barn No. 2, Inc., in conformance with a handwritten statement (subsequently lost) he had given Red Barn No. 2 covering the use of the 30-foot picnic area tract. In March 1966, a dispute arose between Levine and Challas regarding the ownership of the Forty Nine Hundred Central Corporation.

After a year of controversy and litigation, on June 28, 1967, MIL conveyed the south 112 feet of Lot 16 to Henry and Fannie Levine subject to easements of record. Further, Challas individually and his wife executed a quitclaim deed conveying the same property to the Levines. The deeds did not mention the easement which Challas and MIL had given to Forty Nine Hundred Central Corporation. However, Challas testified that he had verbally informed Levine of the easement during the settlement negotiations of the lawsuit between the men.

Levine admitted that he visited Lot 16 before he bought it and observed that the Red Barn trash burner area was partly on Lot 16. He further testified that a day or two after he bought Lot 16 he noticed picnic tables on the 30-foot tract where customers were being served; that part of the lot was paved and part was

being used for a waste or garbage dump; and that the east portion of the 30 feet was being used for parking. Levine thereafter informed the Red Barn manager that he was the owner of the 30 feet and Red Barn should remove its property therefrom. He further testified that he had no knowledge of the easement, that he had never been verbally informed thereof, and that he had relied solely on the abstract, which made no mention of the easement granted over the south 30 feet of Lot 16.

The trial court concluded that MIL had in fact granted an easement over the south 30 feet of Lot 16 to the Forty Nine Hundred Central Corporation; that defendant subsequently entered into possession and made various improvements on that part of Lot 16 with plaintiffs' full knowledge and acquiescence; and that plaintiffs did not have an exclusive right to its possession.

This is an action in ejectment. It is an established maxim that the plaintiff in ejectment can recover only on the strength of his own title and not on the weakness of his adversary's. Minnesota Debenture Co. v. Johnson, 94 Minn. 150, 102 N. W. 381 (1905); 25 Am. Jur. 2d, Ejectment, § 19.

Inasmuch as ejectment is a possessory action, the plaintiff must show a right of possession that is present or immediate, as well as a legal estate in the property sought to be recovered, and unless both facts are established, ordinarily the defendant must prevail. Wells v. Steckelberg, 52 Neb. 597, 72 N. W. 865 (1897); 25 Am. Jur. 2d, Ejectment, § 45; 28 C. J. S., Ejectment, § 24. Ejectment can be maintained only against a person in possession by one having a present exclusive right to possession. Pence v. St. Paul, M. & M. Ry. Co. 28 Minn. 488, 11 N. W. 80 (1881). See, 6A Dunnell, Dig. (3 ed.) § 2870.

A defendant in possession under color of right may generally avail himself of an outstanding title in a third person as a defense although he doesn't connect himself with such title. Redemeyer v. Cunningham, 61 Cal. App. 423, 215 P. 83 (1923); Gibson v. Pekarek, 25 S. D. 281, 126 N. W. 597 (1910).

At the time this action was commenced, the Levines were the owners of the south 112 feet of Lot 16. There was outstanding an unrecorded easement covering the south 30 feet thereof running from their predecessor in title to Forty Nine Hundred Central Corporation, which easement provided for specifically the purposes for which the defendant was and is using the tract. The trial court found, and there is sufficient evidence to substantiate the fact, that Henry Levine had knowledge of this use at the time he purchased the same.

The findings of fact of a trial court, sitting without a jury, will not be reversed on appeal unless clearly erroneous. Rule 52.01, Rules of Civil Procedure. It is axiomatic that where a burden has been imposed upon land sold, assuming the marks of the burden are known to the purchaser or are open and visible and apparent on ordinary inspection of the premises, the purchaser takes the title with the servitude upon it. Taylor Investment Co. v. Kansas City Power & Light Co. 182 Kan. 511, 322 P. 2d 817 (1958); McKeon v. Brammer, 238 Iowa 1113, 29 N. W. 2d 518 (1947). It has long been recognized in Minnesota that a person who purchases land with knowledge or with actual, constructive, or implied notice that it is burdened with an easement in favor of other property ordinarily takes the estate subject to the easement. Werner v. Sample, 259 Minn. 273, 107 N. W. 2d 43 (1961); Huhn v. Ryan, 208 Minn. 128, 293 N. W. 138 (1940).

Because of the outstanding easement running to Forty Nine Hundred Central Corporation, of which the Levines were aware or should have been aware by reason of the use to which the south 30 feet of Lot 16 was being put by defendant at the time of their purchase, they were not entitled to the exclusive possession of that tract and have failed to sustain their burden of proof in this ejectment action even though they are the owners of the tract. The trial court's findings of fact and conclusions of law are affirmed.

Affirmed.